Matter of Alexis X. (Tara Y.) (2023 NY Slip Op 06568)

Matter of Alexis X. (Tara Y.)

2023 NY Slip Op 06568

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

534423
[*1]In the Matter of Alexis X. and Another, Permanently Neglected Children. St. Lawrence County Department of Social Services, Respondent; Tara Y., Appellant.

Calendar Date:November 15, 2023

Before:Lynch, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Keith F. Schockmel of counsel), for appellant.
Stephen D. Button, County Attorney, Canton (Keith S. Massey Jr. of counsel), for respondent.
Trinidad M. Martin, Glens Falls, attorney for the children.

Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of St. Lawrence County (Cecily L. Morris, J.), entered April 19, 2021, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to revoke a suspended judgment, and terminated respondent's parental rights.
Respondent (hereinafter the mother) is the mother of two children (born in 2006 and 2009). In July 2019, the mother admitted to permanently neglecting the children and consented to an adjudication of permanent neglect with the disposition of a suspended judgment for a period of six months.[FN1] In December 2019, a petition was filed seeking to extend the suspended judgment for another six-month period and the parties consented, resulting in an extension of the suspended judgment until July 2020. In January 2020, petitioner filed a petition alleging that the mother violated the terms and conditions of the suspended judgment. A fact-finding hearing was scheduled for July 2020 and the mother defaulted in appearance. Upon learning that the mother's counsel had spoken to her on the previous evening and explained the consequences of default and that the mother had been equivocal about appearing, the court held the hearing in her absence. Thereafter, Family Court determined that the mother failed to comply with the terms of the suspended judgment and scheduled a dispositional hearing for February 2021. At the hearing, the mother responded to the allegations that she had not complied with the order, offering explanations for missing her parenting time and appointments with her case planner and for failing her drug tests. The mother also attempted to call the maternal grandmother as a witness, as she was allegedly willing to serve as a relative resource for placement of both children, but the court denied her request. At the conclusion of the hearing, Family Court revoked the suspended judgment and terminated the mother's parental rights. The mother appeals.
"The purpose of a suspended judgment is to provide a parent who has been found to have permanently neglected his or her child[ren] with a brief period [of time] within which to become a fit parent with whom the child[ren] can be safely reunited" (Matter of Dominique VV. [Kelly VV.], 145 AD3d 1124, 1125 [3d Dept 2016] [internal quotation marks and citations omitted], lv denied 29 NY3d 901 [2017]; see Matter of Brandon N. [Joseph O.], 165 AD3d 1520, 1522 [3d Dept 2018]). "This opportunity is limited in time, during which the parent must comply with terms and conditions meant to ameliorate the difficulty that led to the suspended judgment" (Matter of Max HH. [Kara FF.], 170 AD3d 1456, 1457-1458 [3d Dept 2019] [internal quotation marks, brackets and citations omitted]). "Where a parent's noncompliance with the terms and conditions of the suspended judgment is established by a preponderance of the evidence, Family Court may revoke the suspended judgment and, if in the child[ren]'s best interests, terminate that party's parental [*2]rights" (Matter of Jeremiah RR. [Bonnie RR.], 192 AD3d 1338, 1339 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 905 [2021]; see Matter of Alexsander N. [Lena N.], 146 AD3d 1047, 1048 [3d Dept 2017], lv denied 29 NY3d 903 [2017]). "While a parent's failure to comply with the conditions of a suspended judgment does not automatically compel termination of parental rights, that noncompliance constitutes strong evidence that termination is, in fact, in the best interests of the children" (Matter of Nahlaya MM. [Zaianna LL.], 193 AD3d 1294, 1298 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lvs denied 37 NY3d 905 [2021], 37 NY3d 905 [2021]; see Matter of Jasnia Y. [Alease Y.], 162 AD3d 1148, 1149-1150 [3d Dept 2018], lv denied 32 NY3d 901 [2018]). "Great deference is accorded to Family Court's factual findings, and they will not be disturbed if supported by a sound and substantial basis in the record" (Matter of Jerhia EE. [Benjamin EE.], 157 AD3d 1017, 1018 [3d Dept 2018] [citation omitted]; see Matter of Dominique VV. [Kelly VV.], 145 AD3d at 1125).
The mother argues that as the maternal grandmother was an available resource to accept both children, Family Court erred in terminating her rights and freeing the children for adoption into separate homes. We disagree. At the time of the dispositional hearing, the children had been residing in foster care for approximately 4½ years. The mother confirmed that she was aware of the terms and conditions of the suspended judgment and continued to violate the terms and conditions by missing visits, using drugs and failing to engage in services. Moreover, the mother's testimony primarily focused on her difficulties and her emotions, and she displayed a general lack of awareness and concern for the children.
With regard to the maternal grandmother, the record demonstrates that Family Court appropriately took judicial notice of the fact that the maternal grandmother had previously failed to be approved as a placement resource for the children and, as such, she was not an appropriate placement for the children. Moreover, "[a]lthough siblings should generally be kept together, the rule is not absolute and may be overcome by a showing that the best interests of the children are served by separating them" (Matter of Joshua E.R. [Yolaine R.], 123 AD3d 723, 726 [2d Dept 2014] [internal quotation marks and citation omitted]). We note that while the children had resided in the same foster home for a significant period of time, several weeks prior to the hearing there was an incident involving the younger child which raised safety concerns and resulted in the children being separated and relocated to different homes. The evidence establishes that petitioner consulted with the children's counselor, who recommended separating the children based on safety concerns. Given these circumstances, it would not, in our view, be in the children's best interests [*3]for them to be placed in the same preadoptive foster home, even if any subsequent adoptions would result in the children living separately (see id.; Matter of James WW. [Tara XX.], 100 AD3d 1276, 1279 [3d Dept 2012], lv denied 20 NY3d 1057 [2013]; Matter of Alyssa M., 55 AD3d 505, 506 [1st Dept 2008]). Based on the foregoing,a sound and substantial basis exists in the record to support Family Court's determination that termination of the mother's parental rights was in the best interests of the children (see Matter of Nahlaya MM. [Zaianna LL.], 193 AD3d at 1298; Matter of Jeremiah RR. [Bonnie RR.], 192 AD3d at 1341; Matter of Maykayla FF. [Eugene FF.], 141 AD3d 898, 901 [3d Dept 2016]).
Lynch, J.P., Pritzker, McShan and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: At this hearing, the father of the children voluntarily surrendered his parental rights.