Matter of Ahnna N. (Rosa N.) (2025 NY Slip Op 04057)

Matter of Ahnna N. (Rosa N.)

2025 NY Slip Op 04057

Decided on July 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 3, 2025

CV-23-0947
[*1]In the Matter of Ahnna N. and Another, Permanently Neglected Children. Chemung County Department of Social Services, Respondent; Rosa N., Appellant. (And Another Related Proceeding.)

Calendar Date:May 28, 2025

Before:Aarons, J.P., Lynch, Ceresia, McShan and Powers, JJ.

Lisa K. Miller, McGraw, for appellant.
M. Hyder Hussain, County Attorney, Elmira (Damian M. Sonsire of counsel), for respondent.
Pamela B. Bleiwas, Ithaca, attorney for the children.

McShan, J.
Appeal from an order of the Family Court of Chemung County (Mary Tarantelli, J.), entered March 29, 2023, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to revoke a suspended judgment, and terminated respondent's parental rights.
In July 2020, petitioner commenced permanent neglect proceedings against respondent (hereinafter the mother) and an abandonment proceeding against the father, alleging that the mother had failed to address the issues that had warranted removing the two children (born in 2012 and 2015) from her care and that the father had failed to maintain contact with petitioner or the children. A four-day fact-finding hearing was held on the two petitions in 2021, after which Family Court determined that although the parents had been offered a number of support services, they had failed to take the steps necessary to demonstrate a realistic plan to provide their children with a safe, stable home. At the dispositional hearing subsequent to the court's finding of permanent neglect and abandonment, the court noted that counsel had proposed suspending judgment as a final opportunity for the parents to do what they needed to do for the safe return of their children. An order suspending judgment against both parents until July 2022 — providing a list of conditions that needed to be met for the children to be returned and noting that failure to obey those conditions could result in revocation of the suspended judgment and termination of parental rights — was issued shortly thereafter.
In April 2022, petitioner moved for an order determining that the parents had violated the suspended judgment and further seeking the revocation of the parents' parental rights.[FN1] In August 2022, the attorney for the children followed course, moving for the same relief and further requesting that the mother's visitation rights be suspended.[FN2] Family Court granted suspension of the mother's visitation rights in September 2022 and ordered a fact-finding hearing to determine whether the earlier suspended judgement should be revoked, and the parents' parental rights terminated. Upon conclusion of the fact-finding hearings and a subsequent dispositional hearing, Family Court granted petitioner's relief, revoking the order suspending judgment and terminating the parental rights of both parents. The mother appeals.[FN3] [FN4]
We affirm. A suspended judgment provides a limited time "during which the parent must comply with terms and conditions meant to ameliorate the difficulty that led to the suspended judgment" (Matter of Alexis X. [Tara Y.], 222 AD3d 1213, 1214 [3d Dept 2023] [internal quotation marks and citations omitted]; see Family Ct Act § 633). "However, literal compliance with such terms and conditions is not enough to prevent a finding of a violation, as a parent must also show that progress has been made to overcome the specific problems which led to the removal of the child[ren]. Where a parent's [*2]noncompliance with the terms and conditions of the suspended judgment is established by a preponderance of the evidence, Family Court may revoke the suspended judgment and, if in the child[ren]'s best interests, terminate parental rights" (Matter of Elaysia GG. [Amber HH.], 221 AD3d 1338, 1339-1340 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of R.E. [S.F.], ___ AD3d ___, ___, 2025 NY Slip Op 03377, *1 [3d Dept 2025]; Matter of Alexis X. [Tara Y.], 222 AD3d at 1214). "Family Court's factual findings and credibility determinations are accorded great weight in such a proceeding and will not be disturbed on appeal unless they lack a sound and substantial basis in the record" (Matter of Joshua R. [Kimberly R.], 216 AD3d 1219, 1220 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 905 [2023]).
The testimony during the fact-finding hearing readily established that the mother had failed to comply with various terms of the suspended judgment.[FN5] After the suspended judgment was entered, the mother was evicted from her prior residence and had generally remained homeless during the course of the fact-find hearing (see Matter of Zander L. [Athena L.], 162 AD3d 1671, 1672 [4th Dept 2018], lv denied 32 NY3d 907 [2018]; Matter of Fynn S., 56 AD3d 959, 961 [3d Dept 2008]; Matter of Frederick MM., 23 AD3d 951, 953 [3d Dept 2005]). In line with her general failure to meaningfully communicate with petitioner, the mother refused to provide her caseworker with the addresses for the various residences that she was utilizing during this time. The lack of communication from the mother also precipitated her failure to abide by various other conditions in Family Court's order, including mental health counseling. The mother also became confrontational on various occasions when she was asked to provide a drug screening, and she consequently failed to engage in any drug counseling. To that end, although the mother blamed those failures on her lack of health insurance and issues with transportation, she failed to utilize various resources that petitioner offered, including phone vouchers, bus passes and assistance in applying for insurance. Finally, the mother missed numerous scheduled visits with the children despite often confirming that she would be in attendance. Her failure to attend those visits precipitated severe behavioral reactions from the children, who were often shuttled to the scheduled visits and were assured that their mother would be present only to have her not show.[FN6] On these facts, we find that a sound and substantial basis supports Family Court's determination that petitioner demonstrated by a preponderance of the evidence that the mother had violated the terms of the suspended judgment (see Matter of Elaysia GG. [Amber HH.], 221 AD3d at 1340; Matter of Jeremiah RR. [Bonnie RR.], 192 AD3d 1338, 1341 [3d Dept 2021], lv denied 37 NY3d 905 [2021]; Matter of Max HH. [Kara FF.], 170 AD3d [*3]1456, 1458 [3d Dept 2019]).
As to disposition, we find that Family Court properly determined that terminating the mother's parental rights was in the best interests of the children. To begin, although the mother's failure to abide by the terms of the suspended judgment does not warrant automatic termination of her parental rights, it is a strong indicator that doing so would be in the best interests of the children (see Matter of R.E. [S.F.], ___ AD3d at ___, 2025 NY Slip Op 03377, *1; Matter of Alexis X [Tara Y.], 222 AD3d at 1214). Beyond that factor, the proof at the fact-finding and dispositional hearings established that the children had been in foster care since May 2019. The children had several behavioral concerns and there were noted difficulties in prior placements. However, at the time of the dispositional hearing, the children's behavior and education performance had drastically improved in their placements, with the younger child in a pre-adoptive home and the older child in a home seeking that status. Further, although the mother indicated that she had been living with her sister for about a week prior to the dispositional hearing, there was no evidence that she intended, or would be permitted, to stay in that residence long-term, nor was there any indication that it was a suitable residence for the children. Considering the overwhelming proof that the children's behavior and health were improving in their current placements, alongside the mother's failure to progress to a point where reunification was a realistic goal, we find that there is a sound and substantial basis supporting Family Court's determination to terminate the mother's parental rights (see Matter of R.E. [S.F.], ___ AD3d at ___, 2025 NY Slip Op 03377, *1; Matter of Alexis X. [Tara Y.], 222 AD3d at 1215; Matter of Elaysia GG. [Amber HH.], 221 AD3d at 1341; Matter of Joshua R. [Kimberly R.], 216 AD3d at 1220; Matter of Max HH. [Kara FF.], 170 AD3d at 1459; Matter of Joseph QQ. [Karissa RR.], 161 AD3d 1252, 1253 [3d Dept 2018], lv denied 31 NY3d 912 [2018]).
The mother's various contentions that Family Court exhibited bias during the proceedings are unpreserved for our review in light of her failure to move for recusal at any point during the proceedings (see Theodore P. v Debra P., 209 AD3d 1146, 1147 [3d Dept 2022]; Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1081 [3d Dept 2022], lv denied 38 NY3d 912 [2022]; Matter of Nathaniel W., 24 AD3d 1240, 1241 [4th Dept 2005], lv denied 6 NY3d 711 [2006]). In any event, we find her arguments lack merit. As to Family Court's questioning during the hearing, we do not believe that the court's single inquiry to the mother's caseworker concerning the irony in the mother's failure to seek services despite her testimony that she had aided the father in seeking services created the impression that the court was biased or had "take[n] on the function or appearance of an advocate" (Matter of Lillyana M. [Rondell M.], 230 AD3d [*4]1568, 1570 [4th Dept 2024] [internal quotation marks and citation omitted]; see Theodore P. v Debra P., 209 AD3d at 1147).[FN7] Similarly, Family Court's statements relative to a potential disposition that came immediately after the parents had moved to dismiss the case, when considered in that context, did not reflect that the court had prejudged the case. Finally, as to Family Court's statements made during a permanency hearing that preceded the dispositional hearing, "[a]lthough some of the comments would have been better left unsaid," we do not believe that those statements reflect the presence of bias that "unjustly affected the result to the detriment of the [mother] or that the court had a predetermined outcome of the case in mind during the hearing" (Matter of Cameron ZZ. v Ashton B., 183 AD3d 1076, 1081 [3d Dept 2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 913 [2020]; see Heber v Heber, 237 AD3d 1276, 1279 [3d Dept 2025]; Theodore P. v Debra P., 209 AD3d at 1147; Matter of Nathan N. [Christopher R.N.], 203 AD3d 1667, 1669 [4th Dept 2022], lvs denied 38 NY3d 909 [2022], 38 NY3d 909 [2022]; Matter of Allison v Seeley-Sick, 199 AD3d 1490, 1491-1492 [4th Dept 2021]; Matter of Joshua O, 227 AD2d 695, 697 [3d Dept 1996]; compare Matter of Anthony J. [Siobvan M.], 224 AD3d 1319, 1320 [4th Dept 2024]).
The mother's contention that Family Court directed petitioner to move for revocation is without merit. The court's email to all of the parties asked if petitioner was moving for such relief and, contrary to the mother's contention, the language did not direct petitioner to do so (compare Matter of Weber v Stony Brook Hosp., 60 NY2d 208, 212 [1983], cert denied 464 US 1026 [1983]; Matter of Donald QQ. v Stephanie RR., 198 AD3d 1155, 1157 [3d Dept 2021]). Further, the email was sent one month prior to the deadline established in the court's initial dispositional order that granted the parents a suspended judgment, further suggesting that the court was merely inquiring about the potential for an application as that deadline approached. Finally, we find no basis to conclude, when considering the totality of the record, that the mother was denied the effective assistance of counsel (see Matter of Jase M. [Holly N.], 190 AD3d 1238, 1243 [3d Dept 2021], lvs denied 37 NY3d 901 [2021], 37 NY3d 901 [2021]; Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1088-1089 [3d Dept 2017], lv denied 30 NY3d 908 [2018]).
Aarons, J.P., Lynch, Ceresia and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Subsequently, in May 2022, petitioner also moved to extend the suspended judgment for one year.

Footnote 2: On appeal, the attorney for the children maintains support for petitioner's position, arguing that Family Court properly terminated the mother's parental rights.

Footnote 3: The father has not appealed.

Footnote 4: This Court recently decided an appeal by the mother regarding Family Court's denial of a motion to settle the record for the instant appeal (229 AD3d 882 [3d Dept 2024]).

Footnote 5: Of note, the mother failed to appear in Family Court on three separate occasions. Nevertheless, Family Court permitted her to attend the proceedings by phone on one occasion.

Footnote 6: This course of conduct, and the ensuing behavioral responses from the children, prompted a change in the visitation procedure, wherein the children would not be transported to the facility hosting visitation until the mother was actually present.

Footnote 7: The mother's counsel objected to Family Court's question on the basis that it sought to elicit an opinion from the caseworker as to the mother's thoughts, and the court granted the objection and struck its own question.